IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| MYRA BARTLETT, | * |
| Plaintiff, | * |
| vs. | * |
| W. T. HARVEY LUMBER CO. and PINNACLE HOMES, INC., | * CASE NO. 4:04-CV-132(CDL) * |
| Defendants | * |

O R D E R

Defendants' motions for summary judgment are presently pending before the Court. For the reasons set forth below, Defendant Pinnacle Homes, Inc.'s motion (Doc. 27) is granted, and Defendant W. T. Harvey Lumber Co.'s motion (Doc. 46) is also granted.

INTRODUCTION

This case arises from the alleged sexual harassment of Plaintiff by Mike Sargent, an employee of Defendant Pinnacle Homes, Inc. ("Pinnacle"), while Plaintiff was employed by Defendant W. T. Harvey Lumber Co. ("Harvey Lumber") as a decorator working on the Pinnacle account. Plaintiff contends that this alleged harassment by a customer of her employer created a hostile work environment. Plaintiff further alleges that after she complained to her employer about the harassment, she was terminated in retaliation for her complaints. She brings claims against Defendants for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

Both Defendants seek summary judgment in this case. Pinnacle contends that it is not Plaintiff's employer and that it has fewer

than fifteen employees. Therefore, it argues that it is not subject to suit as an "employer" under Title VII. Plaintiff responds that Pinnacle is an agent of Harvey Lumber, that the two companies should thus be considered a single employer, and that when Harvey Lumber's employees are combined with those of Pinnacle, the fifteen employee requirement of Title VII is satisfied.

Harvey Lumber seeks summary judgment, contending, *inter alia*, that insufficient evidence exists from which a reasonable jury could conclude that the alleged harassment was sufficiently severe or pervasive to give rise to a hostile environment claim under Title VII. Harvey Lumber also seeks summary judgment on Plaintiff's retaliation claim, maintaining that insufficient evidence exists to establish a causal relationship between Plaintiff's complaints of harassment and Harvey Lumber's termination of her employment.

Defendants are entitled to summary judgment if after construing the evidence in the light most favorable to Plaintiff and drawing all justifiable inferences in her favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Construing the record in Plaintiff's favor reveals the following.

## FACTUAL BACKGROUND

Harvey Lumber is a building materials supplier with showrooms located in Columbus, Georgia and Phenix City, Alabama. Pinnacle builds single-family homes and is one of Harvey Lumber's largest customers—Harvey Lumber supplies a number of materials to be used in the construction of Pinnacle's homes. Harvey Lumber also provides decorating services to Pinnacle and its home buyers. A Harvey Lumber

decorator assigned to the Pinnacle account helps Pinnacle home buyers make their decorating selections, such as cabinets, flooring, wallpaper, and paint colors. A Harvey Lumber decorator assigned to the Pinnacle account also makes decorating selections for Pinnacle's speculative homes. Once the decorating selections are made, the Harvey Lumber decorator communicates those selections to Pinnacle and its subcontractors and places orders for materials. In performing these tasks, the Harvey Lumber decorator remains in contact with Pinnacle's personnel, subcontractors, and customers. If a Harvey Lumber decorator fails to complete these tasks in a timely manner, the home-building process could be delayed.

   Plaintiff worked as a Harvey Lumber decorator from February 7, 2003 to June 5, 2003. Becky Mirabella, the manager of Harvey Lumber's decorating department, was responsible for hiring, supervising, and terminating Harvey Lumber decorators, including Plaintiff. During Plaintiff's employment with Harvey Lumber, Plaintiff reported to Mirabella and was subject to Harvey Lumber policies and procedures. Harvey Lumber set Plaintiff's wages and benefits, and Harvey Lumber assigned Plaintiff to the Pinnacle account. Pinnacle was Plaintiff's only account, and Plaintiff was the primary Harvey Lumber decorator responsible for servicing the Pinnacle account. In addition to her duties on the Pinnacle account, Plaintiff was also responsible for helping retail customers who came to the Harvey Lumber showroom. Although Plaintiff spent the majority of her time working on Pinnacle projects, Plaintiff received no wages or benefits from Pinnacle, she did not report to Pinnacle personnel, and no one from Pinnacle had supervisory control over Plaintiff or any authority to discipline, promote, or demote her.

In performing her decorator job, Plaintiff worked closely with several Pinnacle superintendents, including John West and Charles "Bubba" Hendrix.  These superintendents often placed orders with Plaintiff, asked her to check on the status of materials, established deadlines for her, critiqued her work, and instructed her as to how her tasks should be completed so that they would conform with Pinnacle's procedures, standards, and time line.  In May 2003, Plaintiff began working with Mike Sargent, another Pinnacle superintendent.  During one telephone conversation between Sargent and Plaintiff, Sargent told Plaintiff that he was home for lunch, and Plaintiff commented that she was going to miss going home for lunch. Sargent replied that perhaps he could join her for lunch at her house.  During another telephone conversation between Sargent and Plaintiff, which took place on or about May 22, 2003, Sargent told Plaintiff that he was "horny."  When Plaintiff did not reply, Sargent said, "I threw the bait out there and you aren't biting, are you?" Plaintiff replied that she was not interested in Sargent's advances. These two conversations constitute the alleged sexual harassment of which Plaintiff complains in this lawsuit.

On the day of the second conversation between Plaintiff and Sargent, Plaintiff told Pinnacle superintendent John West that Sargent had made advances which upset her. West told his supervisor, Hendrix, about Plaintiff's complaint.  Hendrix later told David Erickson, the president of Pinnacle, about Plaintiff's complaint.[1] In addition, Plaintiff told Mike Jackson, Harvey Lumber's wood shop

---

[1] There is a factual dispute as to when Erickson learned of the complaint.  Erickson admitted that it was possible that Hendrix spoke with him regarding Plaintiff's complaint before Plaintiff was terminated.

4

manager, about Sargent's advances. She also told Jackson that she felt she was being overworked.[2] Jackson, who was not Plaintiff's supervisor, told Plaintiff that she should bring her complaints to Wilfred "Bubba" Gross, Harvey Lumber's chief executive officer.[3] In addition to advising Plaintiff to bring her complaints to Bubba Gross, Jackson looked for William "Billy" Gross, Harvey Lumber's human resources director. When he could not find Billy Gross, Jackson told Bailey Gross, Harvey Lumber's sales director, about Plaintiff's complaint. Bailey Gross did not follow up on this information, although he suggested to Jackson that Plaintiff or Jackson should take the complaint to Mirabella or to Billy Gross in human resources. Jackson did not tell anyone else about Plaintiff's complaint. Plaintiff did not report the alleged sexual harassment to Mirabella, her immediate supervisor; to Billy Gross; or to an employee designated by Harvey Lumber in its "No Harassment Policy" for receiving such complaints. Neither Jackson nor Bailey Gross is an employee designated by Harvey Lumber for receiving harassment complaints. Soon after her conversations with West and Jackson regarding Sargent, Plaintiff's employment with Harvey Lumber was terminated. After Plaintiff was terminated, Jackson made notes about his conversation with Plaintiff and he gave them to Billy Gross.[4]

---

[2] Plaintiff contends that her conversation with Jackson took place two weeks before she was terminated. According to Jackson, he had two separate conversations with Plaintiff: during the first, Plaintiff complained of being overworked, and during the second, which he says took place on the evening of June 4, 2003, Plaintiff complained of Sargent's conduct.

[3] Plaintiff did meet with Bubba Gross to discuss her workload in late May, but she did not complain about Sargent's conduct.

[4] Plaintiff appears to contend that Billy Gross was aware of Plaintiff's harassment complaint *before* she was terminated. She has

It is undisputed that neither Mirabella nor Bubba Gross learned of Plaintiff's sexual harassment allegations until Plaintiff reported the allegations to them approximately three months after her termination from Harvey Lumber.

Plaintiff contends that she was terminated in retaliation for her complaints about Sargent. According to Harvey Lumber, though, Plaintiff was terminated because her performance was unsatisfactory. Mirabella received numerous complaints about Plaintiff from Pinnacle subcontractors, Pinnacle employees, and Harvey Lumber employees. The subject matter of the complaints ranged from Plaintiff's lack of timeliness in completing her tasks to Plaintiff's rudeness in her interactions with customers and coworkers. Although she challenges the factual basis for each of these complaints, Plaintiff does not dispute that the complaints were made.[5] In addition to the complaints she received from the subcontractors, Pinnacle employees, and Harvey

---

pointed the Court to no evidence in support of this contention. There is no evidence that Jackson or Bailey Gross spoke with Billy Gross prior to Plaintiff's termination, and Plaintiff admits that Jackson wrote the notes and gave them to Billy Gross *after* she was terminated. She suggests in her statement of material facts, however, that because Jackson stated that he made the notes the day after his conversation with Plaintiff and gave them to Billy Gross the day after he wrote them down and because Plaintiff recalls that her conversation with Jackson took place approximately two weeks before she was fired, Jackson's testimony shows that the notes were made and given to Billy Gross before she was terminated. This ignores the undisputed fact that Jackson did not make the notes, which reference Plaintiff's termination, until *after* Plaintiff was terminated. Though there is a disputed fact issue about when the conversation between Plaintiff and Jackson regarding Sargent took place, that does not translate into a genuine fact issue regarding when the notes about the conversation were made and given to Billy Gross.

[5] Plaintiff also claims that she never received any disciplinary action or warning from Harvey Lumber or Pinnacle about her performance. Harvey Lumber contends that Mirabella counseled Plaintiff several times regarding her performance but that Plaintiff was rude to her and ignored the counseling.

6

Lumber employees, Mirabella received a complaint about Plaintiff's performance from Pinnacle's president, David Erickson. Erickson told Mirabella during a June 2, 2003 meeting that he had received a number of complaints from Pinnacle's subcontractors regarding Plaintiff's rudeness and her lack of timeliness in completing her job, and he requested that Harvey Lumber assign a different decorator to the Pinnacle account.[6] Mirabella notified Bubba Gross and Billy Gross of her intention to terminate Plaintiff, and they deferred to her judgment on that decision. Mirabella then met with Plaintiff on June 5, 2003 to terminate Plaintiff's employment. During that meeting, Mirabella told Plaintiff that she had received complaints from David Erickson and that he was not happy with Plaintiff's work. Plaintiff brings Title VII claims against Defendants for sexual harassment and retaliation.

## DISCUSSION

*1. Claims Against Pinnacle Homes, Inc.*

Pinnacle bases its summary judgment motion upon its contention that it should not be considered Plaintiff's "employer" for purposes of Title VII. *See* 42 U.S.C. § 2000e(b); *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 932 (11th Cir. 1987) (plaintiff bears burden of proving that defendant is an "employer" within the meaning of Title VII). It is undisputed that Pinnacle did not have the requisite fifteen or more employees during the relevant time frame to be considered an "employer" under Title VII's definition of that

---

[6] According to Plaintiff, when she met with Mirabella, Bubba Gross, and Billy Gross three months after her termination, Billy Gross said that if Pinnacle Homes "said [Plaintiff] had to go, then she had to go."

term.  *See* 42 U.S.C. § 2000e(b).  Plaintiff argues that because of the nature of the business relationship between Pinnacle and Harvey Lumber, the two companies should be considered as a single "employer" under the "agency" test recognized by the Eleventh Circuit in *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999).  *See also Williams v. City of Montgomery*, 742 F.2d 586, 589 (11th Cir. 1984).  It is undisputed that together, the two companies employed the requisite number of employees during the relevant time period.  Therefore, the Court must determine whether Plaintiff has presented sufficient evidence to create a genuine issue of material fact concerning whether Pinnacle and Harvey Lumber should be treated as a single "employer."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The courts "accord a liberal construction to the term 'employer' under Title VII."  *Lyes*, 166 F.3d at 1341.  Therefore, in some circumstances the courts will aggregate two or more ostensibly separate entities in determining whether a plaintiff's "employer" has enough employees to come within the coverage of Title VII.  *Id.*  One such circumstance exists "where an employer delegates sufficient control of some traditional rights over employees to a third party" so that the third party may be found to be an employer by virtue of the agency relationship.  *Id.; see also Williams*, 742 F.2d at 589.[7]

Examining the record in the instant case, the Court finds that Plaintiff has not introduced sufficient evidence to support a finding

---

[7] There are two other tests for determining whether two ostensibly separate entities should be aggregated for the purpose of counting employees: the "single employer" test and the "joint employer" test. *See Lyes*, 166 F.3d at 1341. However, Plaintiff has not presented evidence to demonstrate a genuine fact issue on either of these other two tests.

that Harvey Lumber delegated control of its traditional rights over its employees to Pinnacle.  Plaintiff contends that Pinnacle had control over her employment because Pinnacle superintendents assigned Plaintiff tasks,[8] provided instructions as to how the tasks should be completed, and critiqued Plaintiff's work.  Most significantly, Plaintiff contends that Pinnacle management "ordered" Harvey Lumber to fire her and that Harvey Lumber complied with that order. Plaintiff compares the relationship between Pinnacle and Harvey Lumber in this case to the relationship between the City of Montgomery ("City") and the Montgomery City-County Personnel Board ("Board") analyzed in *Williams v. City of Montgomery*.  In *Williams*, Alabama law *expressly granted* the Board certain rights traditionally reserved to the City as an employer, including the rights to (1) set a pay plan for City employees, (2) set qualifications for each position, (3) evaluate City employees, and (4) transfer, promote, demote, and reinstate City employees.  742 F.2d at 589.  Because the Board had power to exercise duties traditionally reserved to the City as an employer and because the Board actually used these powers, the Eleventh Circuit found that the Board could be considered an agent of the City for purposes of Title VII.  *Id.*

In contrast, in this case, there is no evidence that Harvey Lumber delegated control over Plaintiff to Pinnacle or that Pinnacle exercised such control.  The evidence is undisputed that Harvey Lumber interviewed and hired Plaintiff, paid her wages and benefits, and assigned Plaintiff to work predominately—but not exclusively—on

---

[8] Plaintiff points to the following tasks: Pinnacle placed orders with Plaintiff, requested that she check on the status of materials, and established deadlines for the completion of these assignments.

9

the Pinnacle account. Plaintiff reported to a Harvey Lumber employee, and Plaintiff has admitted that no one at Pinnacle had the authority to assign her job duties, discipline her, promote her, or demote her. As for the tasks "assigned" by Pinnacle to Plaintiff—such as placing orders or requesting status checks on materials—these are things that a customer typically asks its vendor's representative to do, in keeping with that customer's business requirements. Without more, these tasks are not evidence that Pinnacle had control over the manner in which Plaintiff performed her job. Plaintiff also contends that Pinnacle "ordered" Harvey Lumber to terminate her.[9] Even if Pinnacle gave Harvey Lumber the ultimatum "Fire Plaintiff or lose our business," there is no evidence that Pinnacle had any legal control over the employment decision at issue in this case. Pinnacle could not fire Plaintiff, and it had no legal authority to compel Harvey Lumber to fire her. At most, Pinnacle's alleged "order" could be construed as an attempt by a customer to exert financial pressures upon its vendor. Financial pressure by a customer to obtain conditions favorable for the continuation of an arms length business relationship does not convert the separate and independent customer into a joint employer of its vendor's employees.

For these reasons, the Court cannot conclude that Pinnacle and Harvey Lumber should be considered as a single "employer" under the "agency" test. Because Pinnacle was not Plaintiff's employer and did

---

[9] This issue is disputed. Defendants admit that Pinnacle asked that Plaintiff be removed from its account, but Plaintiff in her affidavit avers that a member of Harvey Lumber management told her that Pinnacle threatened to take its business elsewhere if Plaintiff was not fired.

not have fifteen or more employees during the relevant time frame, it is not an "employer" under Title VII's definition of that term, and Pinnacle is entitled to summary judgment on this basis.

*2. Claims Against W. T. Harvey Lumber Co.*

*a. Sexual Harassment Claim*

Plaintiff claims that Harvey Lumber subjected her to a hostile work environment consisting of unwelcome sexual harassment by a customer.[10] To prevail on her claim, Plaintiff would have to establish a prima facie case of hostile work environment by showing: "(1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment 'was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment'; and (5) a basis for holding the employer liable." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1257 (11th Cir. 2003) (quoting *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)). This, she has not done. Pretermitting whether Plaintiff has produced sufficient evidence to impute the alleged harassment of a customer to Plaintiff's employer, it is clear that the alleged harassment—two inappropriate comments during two telephone conversations—was not severe or pervasive enough to create an objectively hostile or abusive work environment for purposes of making out a prima facie case under Title VII. In

---

[10] Plaintiff's Brief in Opposition to Defendant W. T. Harvey Lumber Co.'s Motion for Summary Judgment does not address this claim; Plaintiff has apparently abandoned it. In its Reply Brief, Harvey Lumber suggests that this abandonment confirms that the claim was frivolous and therefore entitles Harvey Lumber to attorney's fees for having defended it. The Court declines to address the issue of sanctions unless it is presented with a proper motion and a response from Plaintiff.

11

determining whether harassment objectively alters an employee's terms or conditions of employment, the following four factors are considered: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc). Applying these factors to this case, it is clear that none of them weighs in favor of Plaintiff: the alleged harassment consisted of two telephone calls during which a customer made inappropriate but non-threatening advances. *See Mendoza* 195 F.3d at 1246-48 (cataloging minimum level of severity established by other circuits and finding that conduct alleged by plaintiff—including an inappropriate comment and inappropriate touching, gestures, following, and staring—fell "well short" of the level of either severe or pervasive conduct sufficient to state Title VII claim). For these reasons, the Court finds that Plaintiff has failed to establish a prima facie case of sexual harassment hostile work environment and that Harvey Lumber is therefore entitled to summary judgment on this claim.

    *b. Retaliation Claim*

    Plaintiff also claims that she was terminated in retaliation for her complaint about Sargent's conduct. *See* 42 U.S.C. § 2003e-3(a). To prevail on her claim, Plaintiff must establish a prima facie case of retaliation by showing (1) that she engaged in statutorily protected conduct, (2) that she suffered an adverse employment action, and (3) that the adverse action was causally related to the protected expression. *Williams v. Motorola, Inc.*, 303 F.3d 1284,

1291 (11th Cir. 2002). Harvey Lumber contends that Plaintiff has failed to establish prongs one and three of the prima facie case.

The Court finds that Plaintiff has failed to establish a prima facie case of retaliation. Even if Plaintiff's complaints to Jackson and West constituted protected activity protected by Title VII, Plaintiff cannot show that the adverse action was causally related to the complaint. To establish a causal connection, Plaintiff must show "that the decisionmakers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Bass v. Bd. of County Comm'rs, Orange County*, 256 F.3d 1095, 1119 (11th Cir. 2001). It is not enough to show that *someone* at the company knew of the protected activity: "the plaintiff must show that the person taking the adverse action was aware of the protected expression." *Id.* The rationale behind this requirement is simple: a decision maker cannot be motivated to retaliate by something unknown to her. *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). For these reasons, Plaintiff must show that the Harvey Lumber decision makers knew of the protected activity *before* they made the decision to terminate her. *See Johnson v. Booker T. Washington Broad. Serv., Inc.* 234 F.3d 501, 507 (11th Cir. 2000) (finding that no causal connection existed because protected expressions occurred *after* plaintiff's employment was terminated).

In this case, Mirabella was the primary decision maker regarding Plaintiff's termination, and both Billy Gross and Bubba Gross were informed of Mirabella's decision and deferred to her judgment. Plaintiff has failed to show that any of these three knew about Plaintiff's complaints to Jackson or West before Plaintiff was

13

terminated. Though "close temporal proximity" between the protected activity and the adverse employment action may be sufficient to show that the two are not wholly unrelated, *see Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000), "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart*, 231 F.3d at 799. In this case, there is evidence that neither Mirabella, Billy Gross, nor Bubba Gross had knowledge of Plaintiff's complaints until *after* she was terminated, and Plaintiff has offered no rebuttal to this evidence. It is true that a decision maker's awareness of protected activity can be established by circumstantial evidence, *see Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993), but Plaintiff has not offered sufficient circumstantial evidence that any Harvey Lumber decision maker was aware of her conversation with Jackson or West. *Compare Goldsmith*, 996 F.2d at 1163-64 (finding sufficient circumstantial evidence that decision maker was aware of protected activity based on decision maker's admission that he may have discussed plaintiff's complaints with the person to whom plaintiff complained) *with Clover v. Total Sys. Servs., Inc.* 176 F.3d 1346, 1355-56 (11th Cir. 1999) (finding insufficient circumstantial evidence of decision maker's awareness because plaintiff's evidence—that the decision maker and a person who was aware of plaintiff's protected conduct regularly spoke with each other—allowed nothing more than "pure speculation" that decision maker was informed of protected conduct). Additionally, there is no evidence that David Erickson, Pinnacle's president, told the Harvey Lumber decision

makers about Plaintiff's complaint, nor is there any other evidence to support imputing Erickson's alleged knowledge of Plaintiff's complaint to the Harvey Lumber decision makers.

Plaintiff argues that even if none of the Harvey Lumber decision makers knew of her complaints, Mirabella acted as a conduit of those who *did* know of the complaint and harbored retaliatory animus toward Plaintiff. Plaintiff argues that David Erickson, Pinnacle's president, knew of Plaintiff's complaint about Sargent when he asked Mirabella to remove Plaintiff from his account, that this knowledge gives rise to an inference that Erickson had a retaliatory motive for his request and that Mirabella acted as Erickson's "cat's paw" in terminating Plaintiff. It is true that some courts have recognized a "cat's paw" theory of liability: under this theory, if a formal decision maker acted as the conduit for a harasser's discriminatory animus, the innocence of the decision maker does not spare the employer from liability. *See Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998) (discussing "cat's paw" cases from other circuits without specifically adopting the theory of liability). In these "cat's paw" cases, an inference of retaliatory animus arises because it is the *harasser* who effectively makes the adverse employment decision and then asks the decision maker to act in accordance with that decision. Under this theory, the employer can be held liable if a decision maker acts in accordance with a harasser's decision and the decision maker does not conduct her own evaluation of the harassed employee's situation. *See id.* "In a cat's paw situation, the *harasser* clearly causes the tangible employment action, regardless of which individual actually signs the employee's walking papers." *Id.* (emphasis added).

This, however, is not a cat's paw situation. For it to fall in line with those cases, there would have to be some evidence giving rise to an inference that *Erickson* had a retaliatory motive for requesting a new decorator. There is nothing in the record to support such an inference. It is true that Erickson arguably knew that Plaintiff had complained about Sargent's behavior. Therefore, Erickson should have known that any gripe by Sargent about Plaintiff's work might be tinged with the bitter sting of rejection. If Erickson had relied solely upon a complaint by Sargent in making his decision to request a new decorator, without consulting other sources regarding Plaintiff's performance, his link in the chain *might* fit within the "cat's paw" line of cases. However, there is no evidence that Erickson relied upon a complaint by Sargent in making his decision: in explaining his dissatisfaction with Plaintiff's work, Erickson referenced complaints by customers, realtors, and subcontractors. Additionally, there is no evidence to rebut Erickson's assertion that these complaints were actually made, nor is there evidence giving rise to any inference that Erickson relied upon these other complaints as an elaborate ruse to accomplish Sargent's (assumed) desired result of getting Plaintiff fired or to get back at Plaintiff for complaining about his employee. Simply put, from the record before the Court, it is difficult to discern any retaliatory motive on Erickson's part. *Cf. Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999) (noting that when the biased recommender of an adverse employment action and actual decision maker are not the same person, plaintiff must prove that discriminatory animus behind the recommendation—not employee misconduct identified in the recommendation—was the actual cause of the adverse employment

action).  Therefore, Plaintiff cannot rely upon the "cat's paw" theory to establish causation.[11]

Because Plaintiff cannot show that the Harvey Lumber decision makers knew of her protected activity and because Plaintiff cannot establish causation by some alternate theory, the Court finds that Plaintiff has failed to establish a prima facie case of retaliation. Therefore, Harvey Lumber is entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, Defendant Pinnacle Homes, Inc.'s Motion for Summary Judgment (Doc. 27) is granted, and Defendant W. T. Harvey Lumber Co.'s Motion for Summary Judgment (Doc. 46) is also granted.

IT IS SO ORDERED, this 8th day of November, 2005.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[11] If Plaintiff suspected that Erickson had some retaliatory motivation for requesting a new decorator, she was the best person—possibly the only person—to raise that concern to Mirabella.  Plaintiff could have raised this concern during her termination meeting with Mirabella, when Mirabella told her about Erickson's complaints.  Because Plaintiff did not do so, it is difficult to imagine—on the facts in this case—how Mirabella would be in any position to suspect that her customer might be scheming against Plaintiff for some impermissible reason. *Cf. Llampallas*, 163 F.3d at 1250 (applying doctrine of avoidable consequences as one reason to find that plaintiff failed to establish causation).